## Ronald E. STOKES et al *v.* Charlene STOKES

82-300                                    648 S.W.2d 478

Supreme Court of Arkansas
Opinion delivered April 4, 1983
[Rehearing denied May 2, 1983.]

*Richard L. Peel,* for appellants.

*Jonathan P. Shermer, Jr.,* for appellee.

DARRELL HICKMAN, Justice. Carl J. Stokes died testate in 1979. His will, made in 1975, shortly before his marriage to Charlene Stokes, left most of his estate to his adult children by a prior marriage, Ronald E. Stokes and his sister, Nancy Stokes Cornwell, the appellants in this case. The appellee, Charlene Stokes, Carl Stokes' widow, elected to take against his will but we held in *Stokes* v. *Stokes,* 271 Ark.

300, 613 S.W.2d 372 (1980), that several of our gender-based statutes were unconstitutional and she was denied the election.

This particular litigation between the parties arose as an aftermath to our decision in *Stokes* v. *Stokes, supra.* The appellants filed suit against Charlene Stokes in probate court for an accounting of certain rental income she had received during the probation of Carl Stokes' estate. The probate judge dismissed the case without prejudice and we affirmed. *Stokes* v. *Stokes,* 275 Ark. 110, 628 S.W.2d 6 (1982). The case was refiled in chancery court and the trial court essentially held in favor of Charlene Stokes and from that decision the appellants bring this appeal alleging several errors. Actually the question to us is one purely of fact and equity, and we affirm the chancellor.

Carl Stokes had a construction company which he owned with his two children. The company built apartments and the projects were customarily financed by People's Bank and Trust Company. Carl and Charlene purchased a four-unit apartment house from the company that had been financed by People's. After the purchase they were notified by People's that the construction company was heavily in debt and that the company was going to have to provide more money on its various loans. Seven days after the Stokeses purchased the apartment house, they mortgaged it to People's in exchange for an $80,000 loan. Charlene and Carl both signed the note.

Carl had a "rental account" at People's where he deposited the rents from his various apartment complexes and the payments on two notes that he held. This was the Stokeses' primary source of income. At the time Carl mortgaged the four-unit apartment house, he orally directed the bank to automatically take the monthly payments out of the rental account for that mortgage. People's did so for a year before Carl's death and for a year afterwards. It is not disputed that "income" from the apartments, which were ultimately determined to be the property of Carl's estate and not Charlene's, was deposited into the account.

When Carl died, Charlene owned eighteen apartments in her own right or by right of survivorship. Among these was the four-unit apartment house. A few days after Carl's death, Ronald Stokes, the executor of the estate, and his attorney went to Charlene and told her to live as she had been and continue to manage Carl's rental account. Ronald testified that he told her to keep a separate account for the rents from property she owned by herself. She said there was no discussion of separate accounts.

This case arose because the bank continued after Carl's death to draw the payments for the mortgage of the four-unit complex from Carl's rental account. Ronald claimed that Charlene should have made payments on the note from income on her own property since Carl and Charlene mortgaged the property in order to pay the purchase price and since the property was now Charlene's. He also alleged that Charlene was principally liable on the note as a co-maker, and not secondarily liable as an accommodation party.

The chancellor found that Charlene was an accommodation party on the mortgage note, and, therefore, Charlene was right in allowing the note to be paid from income that was the property of Carl's estate. Apparently the chancellor found that the property was mortgaged to meet the debts of Carl Stokes' company and we cannot say that he was clearly wrong. ARCP, Rule 52. Carl died in January and Ronald did not file this action until ten months later. Ronald consented to Charlene's continued use of the rental account and he knew, or should have known, that the mortgage was being paid from that account and made no effort to stop it. Neither Charlene nor People's was directed to stop drawing the payments from the rental account. No doubt the chancellor resolved the dispute between the parties in favor of the appellee, finding the facts and equities of the matter to be in her favor. We can only overrule that judgment if we find it clearly wrong, which we cannot do.

The chancellor did find that the appellee drew $761.00 from the account for insurance on her own property and that sum was ordered returned.

Affirmed.